UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | CRIMINAL NO. 5:13-52 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| RONDALE LAMONT McCANN, ) | |
| Defendant ) | |

\* \* \* \* \* \* \*

This matter is before the Court on the defendant's motion (DE 849) for an order that he be released from prison. He makes the motion under two statutes. First, he cites 18 U.S.C. § 3582(c)(1)(A), which provides for what is commonly referred to as "compassionate release." Second, he cites the CARES Act, PL 116-136, 134 Stat. 281 (March 27, 2020), which was recently enacted in response to the novel coronavirus, COVID-19.

By judgment dated August 25, 2014, this Court sentenced the defendant to a prison term of 192 months after he pleaded guilty to conspiring to distribute 280 grams or more of cocaine base. The defendant asks that he be released to home confinement, citing health concerns regarding COVID-19. He asserts that he faces a high risk of serious illness or death from the virus.

Prior to the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), a motion for compassionate release could be brought by only the director of the Bureau of Prisons (BOP), not the defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act

amended § 3582(c)(1)(A) to allow a defendant to file a motion for such relief on his own, but only if he has first "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or if 30 days have lapsed since the warden of the defendant's facility received the defendant's request to file a motion on his behalf, whichever is earlier. 18 U.S.C.A. § 3582(c)(1)(A); PL 115-391, 132 Stat. 5194 § 603 (Dec. 21, 2018).

In his motion, the defendant does not assert that he has met either of these prerequisites to filing this motion. These prerequisites are jurisdictional, meaning that this Court has no power to grant relief on a motion for compassionate release unless the prerequisites are met.

The Supreme Court has recently addressed whether statutory filing prerequisites should be deemed to limit the jurisdiction of the court. *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1848 (2019). As would be expected, it all depends on the wording of the statute at issue. "If the Legislature clearly states that a prescription counts as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue; but when Congress does not rank a prescription as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id*. (quoting *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 515-16 (2006)) (brackets omitted). In *Fort Bend*, the Supreme Court determined that Title VII's requirement that a plaintiff file a complaint with the EEOC before filing an action in court was not jurisdictional because it does not "speak to a court's authority" or "refer in any way to the jurisdiction of the district courts." *Id*. at 1850-51 (quoting *E.P.A. v. EME Homer City Generation*, *L.P.*, 572 U.S. 489, 512 (2014) and *Arbaugh*, 546 U.S. at 515).

2

Unlike the Title VII provisions, however, §3582(c) does speak to the Court's authority to modify a defendant's sentence after it has been imposed. The statute explicitly states that this Court "may not" modify a prison term except in certain delineated circumstances. One of these circumstances is when a defendant brings a motion for compassionate release, but only if the defendant has first fully exhausted his administrative remedies or given the warden of the prison where he is incarcerated 30 days to respond to the defendant's request that the BOP file such a motion on his behalf. Those circumstances do not exist here. Thus, by the plain language of the statute, the Court "may not" modify the defendant's sentence.

While the Sixth Circuit has not addressed this issue, the Third Circuit has, also in the context of a defendant's motion for compassionate release that cited COVID-19 concerns. The Third Circuit determined that that the defendant's failure to comply with the statutory prerequisites before asking the court for compassionate release was "a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Further, the mandatory language of the statute "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). With a statutory exhaustion requirement, "Congress sets the rules – and courts have a role in creating exceptions only if Congress wants them to." *Id*. at 1857. "[M]andatory exhaustion regimes, foreclose[e] judicial discretion." *Id*. Here, the rules set by Congress prohibit this Court from modifying a defendant's sentence unless the defendant first exhausts the BOP's administrative remedies, or the warden fails to timely act on the defendant's request.

The Court recognizes that these are unsettling times for everyone, including prisoners. But in such a context, the exhaustion requirement of the compassionate release statute is perhaps most important. *See Raia,* 2020 WL 1647922, at *2 ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance" amid the risks posed by COVID-19). The requirement recognizes that the BOP is better positioned than the courts to first assess issues such as a defendant's health, the adequacy of the measures taken by a particular place of incarceration to address any health risks, the risk presented to the public by a defendant's release, and the adequacy of a defendant's release plan.

In his March 26, 2020 memorandum to the BOP director addressing the COVID-19 pandemic, the Attorney General recognized that "many inmates will be safer in BOP facilities" but that, for other inmates, "home confinement might be more effective in protecting their health." (DE 95-1, Memorandum.) He directed the BOP to "consider the totality of the circumstances for each individual inmate," including the defendant's age and vulnerability, the security level of the facility in which the defendant is incarcerated, the inmate's conduct while in prison, the inmate's score under PATTERN, the inmate's re-entry plan, and the inmate's danger to the community. In his April 3, 2020 memorandum, the Attorney General made the finding that "emergency conditions are materially affecting the functioning of the [BOP]," but directed the BOP to continue making "the careful, individualized determinations BOP makes in the typical case." (DE 95-2, Memorandum.) The Attorney General recognized that "[e]ach inmate is unique and each requires the same individualized determinations that we have always made in this

context." The BOP is the institution with the expertise to conduct this analysis in the first instance, not a court.

The statute itself provides an exception to the exhaustion requirement where the warden fails to respond to the defendant's request within 30 days. Given the directive of the Attorney General in his April 3, 2020 memorandum that the BOP move "with dispatch" and that "time is of the essence," it is expected that wardens will conduct their analyses well before the end of the 30-day period. The Court, however, has no authority to alter that statutory time period.

As to the defendant's request for relief under the CARES Act, a provision of that statute lengthens the maximum period of time that the BOP director can authorize home confinement for a prisoner during the "emergency period" that has been declared due to COVID-19. Normally, the BOP director may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). The CARES Act provides that, during the COVID emergency period, upon a proper finding by the Attorney General, the BOP director "may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement … as the Director determines appropriate." CARES Act, PL 116-136, 134 Stat. 281 (March 27, 2020) § 12003(b)(2). While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement. *See United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020).

For all these reasons, the Court hereby ORDERS that the defendant's emergency motion (DE 849) for sentence reduction is DENIED.

Dated April 17, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY